IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JEFFERY SMELSER                                                                    PLAINTIFF

v.                                  Case No. 1:19-cv-1025

DISCOVER BANK                                                                      DEFENDANT

**ORDER**

Before the Court is Defendant's Motion to Compel Arbitration. (ECF No. 17). Plaintiff has filed a response. (ECF No. 22). Defendant has filed a reply. (ECF No. 24). The Court finds this matter ripe for consideration.

**BACKGROUND**

Plaintiff Jeffery Smelser applied for a credit card account and obtained a credit card with Defendant Discover Bank in August 2015. Plaintiff activated his card and made purchases on his account. However, Plaintiff subsequently failed to make payments, and his account went into default. Plaintiff alleges that Defendant then commenced a relentless campaign of automated telephone calls seeking to recover the outstanding balance owed on his account. On May 31, 2019, Plaintiff brought this action, alleging that Defendant's automated telephone calls have violated the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). Plaintiff has also brought a common law invasion of privacy claim, alleging that Defendant's telephone calls have intruded upon his right to seclusion.

When Plaintiff applied for the credit card account in August 2015, Defendant mailed him a packet containing the credit card and a copy of the cardmember agreement. The cardmember agreement cautioned Plaintiff that he would agree to its terms and conditions if he did not cancel his credit card within thirty days. The cardmember agreement also contained a provision requiring

Plaintiff to arbitrate all claims relating to his credit card account. In September 2017, Defendant mailed Plaintiff an updated cardmember agreement containing a similar arbitration clause.

On August 26, 2019, Defendant filed the instant motion, arguing that Plaintiff's claims are subject to binding, valid arbitration agreements and that this action should be stayed pending the outcome of arbitration. (ECF No. 11). Plaintiff opposes the motion, arguing that the arbitration clauses in his cardmember agreements are unconscionable and that this dispute is outside the scope of the arbitration agreements. (ECF No. 22).

**DISCUSSION**

In addressing motions to compel arbitration, courts generally ask: (1) whether there is a valid arbitration agreement, and (2) whether the particular dispute falls within the terms of that agreement. *E.E.O.C. v. Woodmen of the World Life Ins. Soc.*, 479 F.3d 561, 565 (8th Cir. 2007). These two determinations are guided by a "liberal federal policy favoring arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

The Court will first determine whether the arbitration agreements are valid. If the Court answers that question in the affirmative, it will then determine whether the claims at issue fall within the terms of the arbitration agreements. If so, the Court will determine whether this action should be dismissed or stayed pending arbitration.

A. **Validity of the Arbitration Agreements**

The Court will now determine the validity of the arbitration agreements. "The validity of the agreement is determined by state contract law." *Woodmen*, 479 F.3d at 565. Arbitration agreements are examined in the same way as other contractual agreements, and the same rules of construction and interpretation apply to arbitration agreements as apply to agreements in general. *See Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999). The instant

arbitration agreements appear to be governed by Arkansas law.[1] Under Arkansas law, "[t]he essential elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation." *City of Dardanelle v. City of Russellville*, 372 Ark. 486, 490, 277 S.W.3d 562, 565-66 (2008) (citing *Williamson v. Sanofi Winthrop Phars.*, 347 Ark. 89, 60 S.W.3d 428 (2001)). Moreover, Arkansas law provides that:

> [t]he acceptance of the terms and conditions of a credit card account by a cardholder may be established as binding and enforceable by . . . [t]he use of the credit card account by the named credit card account member . . . if the credit card agreement provides that any use of the credit card account constitutes an acceptance of the terms and conditions of the credit card agreement if the time prescribed in 12 C.F.R. § 202.12(b) has expired.

Ark. Code Ann. § 4-107-304(2).

In the case at bar, Plaintiff does not appear to dispute that he accepted the cardholder agreements, including the arbitration clauses.[2] However, Plaintiff argues that the arbitration clauses in his cardholder agreements are invalid because they are unconscionable.[3]

"[U]nconscionability is not precisely defined in the law, one of the earliest applications of the doctrine described an unconscionable contract as one that 'no man in his senses and not under

---

[1] Plaintiff's cardmember agreements do not contain choice of law provisions. However, the parties both cite to Arkansas law in arguing their respective positions. Therefore, the Court applies Arkansas law in determining whether valid arbitration agreements exist.
[2] To the extent Plaintiff does dispute that he accepted the cardmember agreements, the Court finds that Plaintiff accepted when he activated and used his credit card. *See* Ark. Code Ann. § 4-107-304(2).
[3] Plaintiff cites to the Arkansas Supreme Court's decision in *Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, 7, 437 S.W.3d 119, 123 (2014), while arguing that the arbitration agreements are unconscionable. *Asset Acceptance* does not address unconscionability. Rather, the court found that there was no mutual assent to an arbitration agreement where the agreement was communicated to the plaintiff in an unsigned, undated credit card agreement. *Id.* at 9, 24. However, to the extent that Plaintiff argues that credit card agreement in *Asset Acceptance* mirrors the cardmember agreement in this case, *Asset Acceptance* is readily distinguishable. In *Asset Acceptance*, the court premised its ruling on the fact that the plaintiff had not used her credit card. *Id.* Whereas here, there is no dispute that Plaintiff activated his credit card and made purchases on his credit card account.

delusion would make on the one hand, and . . . no honest and fair man would accept on the other.'" *GGNSC Holdings, LLC v. Lamb By & Through Williams*, 2016 Ark. 101, 13, 487 S.W.3d 348, 356 (2016) (quoting *Earl of Chesterfield v. Janssen*, (1750) 28 Eng. Rep. 82, 100 (K.B.)) (internal citation omitted). "Unconscionability is typically considered in terms of either procedural unconscionability or substantive unconscionability." Howard Brill & Christian Brill, 1 Arkansas Law of Damages §17.8, Unconscionability. "Procedural unconscionability encompasses contracts where there is an absence of meaningful choice on the part of one of the parties together with contract terms that are unreasonably favorable to the other party." *GGNSC Holdings, LLC*, 2016 Ark. 101, 13, 487 S.W.3d at 357. "Substantive unconscionability generally involves excessive price or restriction of remedies." *Id.* The burden of proving unconscionability is upon the party asserting the defense. *Poff v. Brown*, 374 Ark. 453, 454, 288 S.W.3d 620, 622 (2008). Plaintiff argues that the cardmember agreements are both procedurally and substantively unconscionable.

**1. Procedural Unconscionability**

There are two important considerations when assessing whether a contractual provision is procedurally unconscionable: (1) whether the injured party was made aware of and comprehended the provision, and (2) whether there is a "gross inequality of bargaining power" between the parties. *GGNSC Holdings, LLC*, 2016 Ark. 101, 14, 487 S.W.3d at 357.

Plaintiff argues that Defendant has offered no evidence to show that he was aware of and comprehended the arbitration clauses in his cardmember agreements. Plaintiff further contends that Defendant's use of preprinted forms evidences both a lack of awareness and comprehension of the arbitration agreements on his part and a disparity of bargaining power between himself and Defendant.

The Court is unpersuaded by Plaintiff's arguments about a lack of awareness and comprehension of the arbitration agreements. Plaintiff argues that Defendant cannot produce any evidence showing that he was aware of the arbitration clauses in his cardmember agreements. However, it is Plaintiff's burden to prove unconscionability—not Defendant's, and Plaintiff does not argue that he never received the cardmember agreements or that he was unaware of the arbitration provisions within said agreements.

Plaintiff also cannot demonstrate a lack of meaningful choice in accepting the arbitration agreements or a disparity of bargaining power between himself and Defendant. The instant arbitration provisions were not worded as "take it or leave it," adhesion contracts. Plaintiff had the option to opt out of the arbitration provisions and still be allowed to maintain a credit card account with Defendant. He failed to do so.

Finally, as to Plaintiff's arguments about preprinted forms, the Court notes that Plaintiff's cardmember agreements are approximately four pages long, with the arbitration clauses occupying about one page of the agreements. The arbitration clauses are set off with bolded, capitalized, and underlined text that is the same font as the rest of the document. They are not obscured by fine print or buried in a voluminous document. Rather, they are readily apparent upon even the most cursory inspection of the cardmember agreements.

Accordingly, the Court finds that the arbitration agreements are not procedurally unconscionable.

**2. Substantive Unconscionability**

As stated above, "[s]ubstantive unconscionability generally involves excessive price or restriction of remedies." *Id*. Plaintiff argues that the arbitration agreements are substantively unconscionable because the agreements' "one-sided appellate fee responsibility is prohibitively

5

expensive." The appellate fees clause at issue states that the "appealing party pays all appellate costs unless the appellate panel determines otherwise as a part of its award."

Upon consideration, the Court again finds Plaintiff's arguments unpersuasive. Plaintiff has not cited to, and the Court is unaware of, any binding authority holding that requiring an appealing party to potentially bear all appellate costs renders an arbitration agreement substantively unconscionable. What authority Plaintiff has cited to concerns fees in connection with the original filing of the arbitration—not appeal. Plaintiff has also not offered any evidence indicating that he cannot afford to undertake an appeal should he not succeed during the initial arbitration. Defendant, on the other hand, has cited to several cases from other jurisdictions upholding similar appellate fee language. The Court further notes that the appellate fee provision applies to both parties, tipping the balance against finding that the appellate provision is substantively unconscionable. *See Hughes v. Wet Seal Retail, Inc.*, No. 10-CV-05090, 2010 WL 4750216, at *3 (W.D. Ark. Nov. 16, 2010) (holding arbitration agreement is not substantively unconscionable where all terms apply mutually to both parties). Therefore, the Court finds that the arbitration agreements are not substantively unconscionable.

In sum, the Court finds that the arbitration agreements are not unconscionable and that they are valid under Arkansas contract law.

### B. Scope of the Arbitration Agreements

The Court must now determine whether the dispute falls within the scope of the agreements to arbitrate. In other words, the Court must decide whether the parties agreed to arbitrate the particular disputes involved in this case. *See Medcam, Inc. v. MCNC*, 414 F.3d 972, 974 (8th Cir. 2005). Federal law determines whether the litigants' dispute falls within the scope of an arbitration agreement. *Donaldson Co. v. Burroughs Diesel, Inc.*, 518 F.3d 726, 731 (8th Cir. 2009). Any

doubt must be settled in favor of arbitration. *Daisy Mfg. Co., Inc. v. NCR Corp.*, 29 F.3d 389, 395 (8th Cir. 1994). Arbitration may be compelled under "a broad arbitration clause . . . as long as the underlying factual allegations simply 'touch matters covered by' the arbitration provision." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n.13 (1985)).

Defendants argue that the language of the arbitration clauses at issue indicates that they are broad ones, requiring liberal interpretation in favor of arbitration. However, Plaintiff contends that disputes under the TCPA fall outside the scope of the instant arbitration clauses. In support of this position, Plaintiff cites to *Gamble v. New England Auto Finance, Inc.*, an Eleventh Circuit decision holding that a plaintiff was not required to arbitrate her TCPA claims. 735 F. App'x 664, (11th Cir. 2018).

The Court agrees with Defendants. The arbitration clauses at issue are undoubtedly broad. The arbitration clause in Plaintiff's original cardmember agreement states:

> In the event of a dispute between you and us arising under or relating to this Account, either may choose to resolve the dispute by binding arbitration, as described below, instead of in court. Any claim (except for a claim challenging the validity or enforceability of this arbitration agreement, including the Class Action Waiver) may be resolved by binding arbitration if either side requests it. THIS MEANS IF EITHER YOU OR WE CHOOSE ARBITRATION, NEITHER PARTY SHALL HAVE THE RIGHT TO LITIGATE SUCH CLAIM IN COURT OR TO HAVE A JURY TRIAL. ALSO DISCOVERY AND APPEAL RIGHTS ARE LIMITED IN ARBITRATION.

(ECF No. 14-1, p. 3) (emphasis in original).

The arbitration clause was later amended in 2017 to read:

> In the event of a dispute between you and us arising out of or relating to this Account or the relationships resulting from this Account or any other dispute between you or us ("Claim"), either you or we may choose to resolve the Claim by binding arbitration, as described below, instead of in court. Any Claim (except for a claim challenging the validity or enforceability of this arbitration agreement, including the Class Action Waiver) may be resolved by binding arbitration if either side requests it.

7

(ECF No. 19, p. 3)

Plaintiff's reliance on *Gamble* is misplaced. In *Gamble*, the plaintiff entered into a loan agreement with the defendant that "require[ed] arbitration of any 'claim, dispute or controversy . . . whether preexisting, present or future, that in any way arises from or relates to this Agreement." *Gamble*, 735 F. App'x at 664. After the plaintiff paid off her loan, the defendant repeatedly texted the plaintiff attempting to solicit new business. *Id.* The Eleventh Circuit affirmed the district court's decision to deny the defendant's motion to compel arbitration, holding that "[plaintiff's] TCPA claim . . . arises not from the Loan Agreement or any breach of it, but from post-agreement conduct that allegedly violates a separate, distinct federal law." *Id.* at 666. However, here no post-agreement conduct is implicated. The crux of Plaintiff's claims is that he was unlawfully harassed by phone calls attempting to collect a debt owed on his existing credit card account. As such, Plaintiff's claims certainly "result" from his account and concern a dispute between he and Defendant. Keeping in mind that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, the Court finds that the arbitration agreements cover Plaintiff's TCPA and invasion of privacy claims. *See Daisy Mfg. Co., Inc.*, 29 F.3d at 395.

**C. Conclusion**

In light of the Court's above finding that Plaintiff should be compelled to arbitrate his claims, the Court must now determine whether to dismiss Plaintiff's claims or stay all proceedings in connection with his claims.

"The [Federal Arbitration Act] generally requires a federal district court to stay an action pending an arbitration, rather than to dismiss it." *Green v. Supershuttle Int'l*, 653 F.3d 766, 769 (8th Cir. 2011); 9 U.S.C. § 3 (stating that district courts "shall . . . stay the trial action until arbitration has been had in accordance with the terms of the agreement"). In other words, the

Federal Arbitration Act authorizes a court to stay a proceeding when the dispute is referable to arbitration but does not require dismissal of the case.

There is some authority for a judicially created exception to this seemingly mandatory language regarding a stay. *See Unison Co., Ltd. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 821 (8th Cir. 2015) (recognizing that district courts may decide whether it is appropriate to dismiss the case or stay it pending the outcome of the arbitration proceedings); *Green*, 653 F.3d at 769-70 (stating that district courts "may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration"). However, the Court declines to apply the exception to the present case. Accordingly, the Court finds that all proceedings in connection with Plaintiff's claims against Defendant should be stayed pending the resolution of arbitration.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant's Motions to Compel Arbitration (ECF No. 17) should be and hereby is **GRANTED**. Plaintiff's claims in this matter are hereby referred to arbitration in accordance with the cardmember agreements. The matter is hereby **STAYED** and **ADMINISTRATIVELY TERMINATED** pursuant to 9 U.S.C. § 3, without prejudice to the right of the parties to reopen the proceedings to enforce the arbitrator's decision

**IT IS SO ORDERED**, this 31st day of October, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge